The fourth cases for argument are 23-2939 from the District of Minnesota, Sam Wolk v. David Hutchinson, et al., consolidated with 23-2940, also from the District of Minnesota, Sam Wolk v. City of Brooklyn Center, et al., consolidated with 23-2943, and 23-2949 from the District of Minnesota, Sam Wolk v. Minnesota Department of Natural Resources, et al., consolidated with 23-2944 from the District of Minnesota, Sam Wolk v. Tim Gannon. Okay. First to argue is Mr. Farrell. Good morning, Your Honors, and may it please the Court. My name is Pete Farrell. I represent the DNR defendants. I have very limited time this morning, so I just want to focus on two quick points, both of which are dispositive. First, the complaint as to the DNR is barred by the Eleventh Amendment, and second, the complaint as to Colonel Smith and Captain Carey fails because it does not allege their innocence. Let me start first with the Eleventh Amendment issue. It's well settled that under the Eleventh Amendment, a plaintiff cannot bring a direct claim against a state or state agency in federal court. That's exactly what the plaintiff has done here. They have sued the DNR directly. The plaintiff does not dispute that. Their sole response is to say, we should be able to sue the DNR directly because we are suing the DNR for prospective relief only, but that argument is foreclosed by several precedents of the U.S. Supreme Court in this Court's decision in Monroe, where this Court directly held that the Eleventh Amendment can't get around the Eleventh Amendment by pleading a direct claim against a state agency for any form of relief, prospective or otherwise. So for that reason, the DNR is out of the case, and the district court erred when it denied the DNR's motion on that basis or didn't address the DNR's motion on that basis. Unless there are any questions on the Eleventh Amendment, I'll shift to the qualified immunity issues and the allegations against Colonel Smith and Captain Kerry. The fundamental problem with this complaint is that it just doesn't allege their personal involvement in any of the alleged constitutional harms. The complaint barely mentions Colonel Smith or Captain Kerry. It is truly an example of a complaint where the allegations boil down to, I got hurt, Colonel Smith and Captain Kerry were the important people from the DNR that were involved in Operation Safety Net, and therefore, liability. There's no specific allegation linking Colonel Smith or Captain Kerry to the specific harms that this plaintiff suffered, alleges to have suffered on April 13th or April 14th. What about the fact that they say that Kerry and Smith directed the other law enforcement personnel, according to the complaint, that it alleges that they were aware of and authorized law enforcement's Fourth Amendment and First Amendment violations during the protests, knowing that the city commission had passed the resolution banning tear gas and rubber bullets. So I think what their claim really is, is that they directly supervised and they were aware of the violation of the resolution and that they, therefore, allowed it or authorized it to go forward. Do they have to be physically present for that? And do they have to allege that or is it just sufficient to say they directed that behavior? So I don't think it's sufficient, and I just want to clarify a couple aspects of what I think is alleged in the complaint in response to that question. So there's multiple law enforcement agencies involved here, and there's actually no specific allegation that Colonel Smith or Captain Kerry directed the use of force as to this plaintiff on April 13th or April 14th. And to the extent they're relying on that city council resolution, that city council resolution was passed by the city of Brooklyn Center. It concerns conduct by the Brooklyn Center City Police Department that predates the deployment of Operation Safety Net, which included the DNR. And so that allegation has nothing to do with Colonel Smith or Captain Kerry. That has to do with stuff that happened before Colonel Smith or Captain Kerry ever would have been – ever would have showed up on the scene. What date did they show up? Operation Safety Net was – Operation Safety Net was deployed on April 12th. Yeah, but the question is what date they showed up. Colonel Smith or Captain Kerry, there's no specific allegation about when they showed up. But DNR officers were there on the 12th. Is that correct? DNR officers were there on the 12th. Pleading include allegations of excessive force on the 12th? Not against other individuals. Generally. And there were allegations or at least reports of excessive force on the 12th. Is that correct? Not of which Colonel Smith or Captain Kerry were aware. There's no specific allegation as to that. And again, I think the problem with the complaint, and as this Court has emphasized, in cases like Street and Folk, if I may just complete the answer to this question. As long as Judge Coates wants to ask, go ahead. As this Court has emphasized in Street and Folk, is that there is – I mean, there is no vicarious liability under Section 1983, and supervising officers can't be held liable for the misdeeds of other subordinate officers unless there's some sort of connective tissue between the alleged constitutional harm and the knowledge of the supervising officer. And this complaint just doesn't have that connective tissue. Okay. Thank you for your argument. Ms. McLaren. May it please the Court. My name is Sarah McLaren, and I'm here on behalf of Hennepin County Sheriff David Hutchinson in Hennepin County. I want to address the Brooklyn Center resolution right off the bat, since it seems to be something that makes this case more unique than others I've been involved with. The Brooklyn Center resolution, by its terms, by the allegations in the complaint, only applied to the Brooklyn Center Police Department. So it never – it never applied to the other partner agencies that were in Brooklyn Center, including state law enforcement, including the DNR, and the Hennepin County Sheriff's Office. That's by the terms of the resolution, and it's also by state law, which gives the sheriff original law enforcement jurisdiction throughout Hennepin County. So he didn't need permission to be there. He had his own law enforcement jurisdiction to be there. If you look at the resolution itself, too, it didn't ban excessive force. It sought to ban all use of tear gas and all use of less lethal munitions. Now, that's a policy choice that local governments can make, and they did make for their own police department there. But it does not affect the constitutionality of the use of those devices, including – and we've cited them in our briefs. We have a long line of cases finding, under the totality of the circumstances, of course, need to be considered, that chemical munitions, less lethal munitions, those can be – mass arrests, those can occur constitutionally. So what we have here is – Alito, did the fact that the city council deemed those inappropriate, a relevant factor? You just indicated all the facts play into whether or not the use of force was reasonable. Here we have an elected body saying we don't believe the force is reasonable, essentially. You could interpret that that way. Is that one of the facts we may consider, at least? I don't think it quite ties the bow for them in the – even at the Rule 12 stage, because there is such – there can be – there is cases that local governments all the time can set a higher constitutional – excuse me – can set a higher standard for their law enforcement than the constitution requires. I misspoke there in an important way. So Brooklyn – that's what they did here. The Brooklyn Center City Council said – it's – you know, it's in their resolution. They said people are grieving. We need to give people the space to grieve. This is making it worse that you're using these tactics and techniques. In our city, this is the standard. That is not a factor, though, that does not impact this court's analysis, let alone establish clearly established law that would mean the defendants here would not be entitled to qualified immunity. Does it matter that we're at the motion to dismiss stage rather than summary judgment? It seems to me that pretty clearly if you do the discovery and things are as you say they are, that the case is, you know, a very different case than it would be in this particular case at this stage. Certainly. So, yes, here we're at Rule 12, but we still have to – they have to plausibly allege each individual defendant's liability because they're not just seeking – they're not seeking just liability against the municipalities. They're seeking liability against the individual supervisors. And that is still a particularized inquiry into each individual. Here we have the heads of the agencies, each of them, then responding to an undisputed emergency situation. This is, I think, very different than the Boudy – I don't know if it's Boud or Boudy – but the Boudy v. Lashok case where you had – it sounds to me like the in that case. They had this kettling situation hours after dispersal orders had happened. You had residents from the area being swept up in it, not allowed to leave, maybe somebody being pulled outside the kettle, pulled in. You had the supervisor within arm's length of other people using excessive force who were later federally criminally charged. That is – And you had a video. And you had a video. Yes, absolutely, Your Honor. You did have video there. So that is absolutely different than what we have here where we have an emergency situation, lawful tactics in the general sense being deployed, permitted by policies that they have cited in their complaint. And then they're asking the head of that agency to immediately assume there is a news report of this. They must have violated the policy even though they can use this under the right remainder of my time for rebuttal. Yes, ma'am, you have rebuttal. Ms. Engelar. Good morning. Stephanie Engelkar for the City of Brooklyn Center and Commander Gruenig. I can hop into an argument, but I'm happy to answer any questions you have for the city. Otherwise, I want to make just a couple quick points. I'm not going to repeat the arguments of my co-counsel other than to say us too. And really the big key here for Commander Gruenig in looking at the complaint and considering Rule 12, it's what's not there. So first of all, he's only named in his individual capacity. So any of the appellee's efforts to piggyback and say there was an official capacity claim, it's just not even there in the text of the complaint. But then what's also missing is an actual supervisory liability claim against Commander Gruenig. So it's not there. It wasn't appropriate for the district court to consider that. And the district court also said, and here we agree with the district court here, there's no direct involvement by Commander Gruenig. So there's no direct liability claim. The other side says that if we really look at the record, we'll see he was present and giving orders. That's a paraphrase of what they say. Is that true or not true by the complaint? By the complaint, it's true on April 11th and April 12th, but it's not true for April 13th and 14th. The complaint does not say that Gruenig was present and giving commands and orders on the 13th and 14th. So by the text of the And I would add that in terms of the argument that there was enough there for this direct liability claim, the district court said there's no direct involvement. At this stage, the appellee cannot challenge the district court's decision on that point. It's not right for that review on appeal. But what we're to dismiss and to dismiss the amended complaint. I will just add that Dundon does add another interesting element here. I'm the one that threw that in. It wasn't raised below because you guys gave us that gift this fall. Thank you for that. But the point there, it goes to some of those supervisory liability arguments that in Dundon, this court considered the fact of if it's not clearly established that that was a seizure to use force to disperse a crowd, then how could those entities be on notice to train their officers and to address that? So I just note that that adds another element here if the court looks at that. But frankly, under Rule 12 and Iqbal Twombly, there's enough here to reverse the district court's order. Thank you. Thank you, Ms. Engelar. Mr. Varland. Morning, Your Honor. Brian Varland here on behalf of Appellant Tim Gannon. I will just say briefly that I would join in the arguments of the City of Brooklyn Center and Tony Grunig. I want to echo the comments of my fellow counsel for the appellants as to the points made today. A couple of key points when it comes to Tim Gannon, it's the amended complaint itself admits the fact that he resigned before the appellee. It alleges that the appellee was at the site on the evening of April 13th, 2021 at 8.30 in the evening. Consistent with the argument by my fellow counsel, there are no particularized allegations as to Tim Gannon with respect to what happened on the evening of April 13th or April 14th, which are the dates the appellee alleges the appellee was injured. And so under the Iqbal standard, to survive a motion to dismiss, a complaint must contain sufficient factual matter accepted as true to state a claim plausible on its dates. We ask for reversal. Thank you. Thank you. Now to the other side, Mr. Stauber. Good morning, Your Honors. May it please the Court, my name is Tony Stauber from Gustav Singelic on behalf of Plaintiff Appellee Sam Wolk. At its core, this appeal is about what plaintiffs allege and the inferences that the district court made in denying the defendant's motion to dismiss. You just heard the defendants express their dissatisfaction with those inferences, but that doesn't change the fact that all of those inferences are grounded in allegations made in the complaint and are reasonable and demonstrate the plausibility of plaintiff's claims. Beginning with the DNR on the 11th Amendment — excuse me — on the 11th Amendment immunity issue, it's true that States and State agencies are immune from suits in Federal court unless they consent. But there is an exception under Ex parte Young, which allows suits against State actors in their official capacities for prospective injunctive relief. Isn't this about a past event? Isn't this whole case about a past event? Included in our preamble relief is an injunction, an injunctive relief asking that the defendant and the defendant agencies be enjoined from these practices in the future. And so because the complaint names or asks as part of its preamble relief — Scalia, what exactly is that injunction supposed to look like? You know, I mean, in the real world, district courts do not enter orders that say you are enjoined from committing criminal acts in the future or you are enjoined from violating the Constitution. And since the question of force that is used in a matter of civil disrest or possible unrest or possible riot is always a question of what's reasonable, how are we supposed to enjoin that behavior? I mean, think about what you're asking a district court to do. I'm supposed to write some sort of an order that tells them that I can foresee the future, I know the circumstances that they're actually going to confront, and somehow this is going to be unreasonable. That seems like a big ask and that there is no way that any district court can actually craft such an order. Well, I would say that, as a general principle, there are certain kinds of conduct that the district court would have authority to say this is something that we enjoin from the future. If you demonstrate that some conduct is always facially unconstitutional, that's so. But what have you alleged here that is facially unconstitutional? Isn't it all fact-specific and isn't it all as applied? Well, I will say that one of the set of circumstances here that I believe you as the court could say is facially unconstitutional in all situations is the use of less lethal force on peaceful protesters without warning and without time to comply. So the Dundon case that says that was not clearly established as law in this circuit, the use of force to disperse a crowd, it's not even a seizure. Are you familiar with the Dundon case? Yes, I am, Your Honor. Okay. Go ahead and tell me how this case, how Dundon does it do it on a clearly established basis. Well, first, I think that there is a legal difference because that was argued at the summary judgment stage, which is particularly important because in Dundon, the development of the factual record allowed them to reach conclusions such as the protesters organized the protest, organized itself into a unit and began to march towards the police barricade to remove the second dump truck. That being a factual conclusion here, the allegations are that there was a peaceful protest. Moreover, the Dundon case, another factual finding in the Dundon case that the decisions about using force in response to the protests is left to the discretion of the individual officer. That's a fact-specific question that can't necessarily be applied here, where we're saying that the supervisory liability attaches and that there wasn't individual discretion. And, and, and? You're talking violation and I'm talking what's clearly established law. If there's no clearly established law, and of course, I'm just talking about I think it's your count two, Fourth Amendment claim. Yes. You don't think Dundon obliterates it? Well, first, respectfully, we would push back against the assertion that a use of force cannot be unconstitutional or is only unconstitutional if there's a subjective intent to effectuate arrest. However, even if Dundon forecloses the, the clearly established right to a Fourth Amendment violation, we still have a First Amendment violation which isn't addressed in Dundon. Okay. Your counts one and three. Go ahead. Counts one and three, correct, Your Honor. Proceed. Moving on to, to qualified immunity, and I'll say generally with regard to all of the Brooklyn Center Resolution, it seems that defendants are missing the point. It's not necessarily that the conduct is enjoined on behalf of all of the individual defendant agencies. The Brooklyn Center Resolution was only binding as to Brooklyn Center. However, the standard for qualified immunity for supervisory liability requires that the defendants be put on notice of the use of excessive force. We plead that the Brooklyn Center Resolution, even if, for example, the DNR wasn't on the scene until the 12th, the Brooklyn Center Resolution was a highly publicized event which put on notice the fact that these tactics, such as use of less lethal force on protesters, was, was taking place in the city of Brooklyn Center, and that's relevant to the supervisory liability portion. So at its core, plaintiffs allege, as pertains to the DNR and as pertains to the other that the first night of protests occurred on April 11th with the co-defendants exhibiting excessive force against protesters. You have no claims on that date, though, right? We do not, Your Honor, no. But it's relevant to the inquiry. Is the 13th that you have claims on? Tell me the right date. The 14th, Your Honor. The 14th. Thank you. The 14th. Proceed. Yes. But, but all of this scene setting is relevant to the, the acts which would put the DNR on notice of their unconstitutional conduct. Following that night, the Brooklyn Center City Council meets and passes this resolution. The next day, starting on the 12th and continuing on into the 13th, plaintiffs allege that there is continuing violations and, and excessive force used on protesters, this time joined by the DNR. And then on the morning of the 14th, before Plaintiff Wolk was injured, we have the mayor of Brooklyn Center appearing on, on television to address the treatment of protesters and to distance himself from the policy decisions to use that force. All of those actions are things which would put the DNR defendants, all of the defendants, but here specifically the DNR defendants, on notice of the unconstitutionality of the actions that they continued then to authorize. I will yield the remainder of my time to my colleague, Ms. Mahoney-Mosedale, unless Your Honors have any questions. Thank you. Ms. Mahoney-Mosedale? Good morning, Your Honors. My name is Frances Mahoney-Mosedale, and may it please the Court. I'm here on behalf of Plaintiff Wolk in this matter. The District Court found that plaintiffs adequately stated a claim for their First and Fourth Amendment claims, and those holdings should be affirmed today. Like my colleague said, this is a motion to dismiss hearing. The Court must view the complaint in light most favorable to the non-moving party plaintiff here. Defendants' briefs are replete with arguments that require this Court not to follow this standard. Again and again, defendants would have this Court draw inferences against plaintiffs or at least not in their favor. The complaint should be read as a whole and not parsed piece by piece to determine whether each allegation is plausible in isolation. Counsel, let me interrupt you. What dates does the complaint say that Smith and his — I think Kerry, as you've been saying, friends who call it Carr, but we won't go there. But Smith and Kerry, what date were they first on the scene or first in command, the things that I summarized from your argument? Commanded, on scene, and ordered were my notes of what your argument was. Sure. What dates were they first on scene, command, on scene, and ordered? Do you know what date that would be? They joined them on the 12th. So you're saying they were there — your complaint says they were there on the 12th. I believe that is the case, yes. I'm arguing behalf on the Brooklyn Center and Hennepin County Sheriff's Office as Defendant Gruening and Sheriff Hutchinson, but I believe that is the case, yes. Okay. I was interested in the DNR, Smith and Kerry. Yes. So taking the arguments one by one, the supervisory claims. A supervisor does not need to have personally participated in the constitutional violation or even known about the violation at the time in order to be held liable. As to Defendant Gruening, plaintiff alleges that Gruening was responsible for supervising the BCPD officers while they were repeatedly firing less lethals on peaceful protesters. As my colleague stated, this use of force was so widespread that Brooklyn Center passed a resolution restricting this use. And he was a police chief who was not there at the time the injury occurred, right? Correct. But he was on the ground in previous days as acting as a commander on the 11th and 12th. And the facts, again, on Gannon, he was resigned by then, right? Yes, that is the case. So there can't be any claims against Gannon, can there? We're not claiming he's directly responsible for Plaintiff Woke's injury. I would agree with Your Honor in that case. But he's a defendant in the case, right? Yes. Defending Gannon's involvement is relevant as it goes to the unofficial custom established by Brooklyn Center in terms of our liability claims. Is that plain from the complaint? Because when I was reading the complaint, I didn't see that in there, that that's what it's limited to. I mean, and I get where, you know, it's notice pleading, and we now have Iqbal and Tuomly, and what are we supposed to do? But it kind of looked like whatever Gannon was doing was alleged to be outside of the allegations in the complaint. But you're now saying that, well, he was part of an unofficial custom in practice, and that gives him liability? Well, Defendant Gannon was responsible for the culture, policy, training of Counsel, was that culture changed? He's Brooklyn Center, right? Yes, that's correct. That was changed by the City Council, right? That culture changed from culture to counterculture, right? Right. I will note that that And that also get Gannon out of the case? I would push back on that, given that it's the Brooklyn Center City Council that passed the resolution, not, it wasn't a policy developed by the Brooklyn Center Police. Sure, the Council runs the police in that city, right? Yes. Okay. And the Council has the right to direct the police to cease and desist from a practice, right? Certainly. And once they do that, how's the culture, practice, and whatever was going on before the order to cease and desist, how does Gannon have continued liability for that? Well, we allege in the complaint that the resolution, while there was a written policy change, it wasn't followed. It wasn't implemented. Gannon wasn't there not to follow it, he's gone. Yes. Okay. Well, I think we're beating Gannon too much as far as I'm concerned. Proceed on to something else. Sure. I think we would agree that Defendant Grunig is the more poignant Chief of Police here. So, as I said, the complaint alleges that BCPD continued to use the force against our districts. Is it true the district court didn't, I'm sorry to interrupt you again, is it true the district court didn't address at all Hennepin County? They don't mention Hennepin County in the order? The court does not? No, that's not the case. The order mentions Sheriff Hutchinson. Yes. I think it does mention the sheriff, but it doesn't mention the county, right? They were sued separately, right? They're separate parties. Yes. Separate defendants. Go ahead. Yes. But Sheriff Hutchinson was there on the ground directing officers, and that's where his liability attaches. Doesn't necessarily go to Hennepin County, as you know. No respondeat superior. Yes, yes, that is the case. However. You believe the district court's order does have Hennepin County in it? I believe so, especially given that Hennepin County was part of Operation Safety Net. Mayor Elliott wrote to Sheriff Hutchinson. I'm talking about what the district court put in its order. Yes, yes. And the district court order does include this letter, mentions this letter that Mayor Elliott wrote to Sheriff Hutchinson on the 15th saying Brooklyn Center was in need of mutual aid from Hennepin County. Okay. So I do believe that we have some allegations that would keep Hennepin County in the case. Okay. I see no analysis about Hennepin County in the district judge's order. I mean, I see references to the Hennepin County sheriff, but I see no analysis of Hennepin County. Yes. So in the absence of any respondeat superior and no discussion of Hennepin County, what are we to make of that? I mean, it just seems like that's a big we didn't bother to rule on it, so it's still hanging out there. I mean, although we did enter an order, right, but there's no analysis. And so what does that order mean? Are we just supposed to infer from the findings related to the sheriff and the individual officers? Is that what we're doing? Well, I mean, I would agree that I won't argue that the order isn't perhaps sparse on analysis on Hennepin County. However, the complaint is not. So Justice Wright based her order on the drawing inferences based on the facts or in the allegations of the complaint. We believe that plaintiff has made these allegations and that there's enough there on notice pleading to support the ruling of the district court. I would just, with my remaining time, like to point that I'd like to touch on the conspiracy claim. Defendants' briefings state that plaintiff largely relies on defendants' membership and operation safety net and depends on that to keep the conspiracy claim, to allege conspiracy. However, that's simply not true. There's additional allegations about the April 15th letter where Mayor Elliott discusses the remain and remains in need of mutual aid. And it's just, this is, this is a motion to dismiss. The agency shouldn't be allowed to hide by the, hide behind the lack of discovery. So thank you, Your Honors. We request that the district court affirm the district court's rulings. Thank you, counsel, for the argument. I understand Ms. McLaren is doing the rebuttal. And hold on one second. Should say a full minute. Sure. Full, whole minute. Thank you. Your Honors, just to touch briefly, I agree the court ruled it dismissed both Hennepin County defendants' motions to dismiss in the last page of the order, but it contains zero analysis of the Monell claim or the municipal liability claims. Also, the April 15th letter, that came the day after the plaintiff's injury, so I've never understood the relevance of that for either supervisory liability or official capacity claims. Well, could it, could it be some sort of evidence leading to an inference that the policy preexisted the letter? Well, and again, I think that gets us back to the policy is just that. It's a city policy. So is the policy itself, setting a higher standard than the Constitution, something that would put a separate head of an agency on notice of a pattern of unconstitutional behavior? We don't think so. I will say that I respectfully request that the district court be reversed. Thank you. Thank all the counsel for your argument in this case. And the cases, let me read the list, counsel. Cases 23-2939, cases 23-2940, 23-2943, and 23-2944 are submitted for decision by the court. Ms. Laska, does that conclude the docket today? Yes, it does, Your Honor. Okay. The court will stand and recess.